ARTHUR D. BROWNE, Executive Director, Coordinating Council for HigherEducation
You have requested my opinion on numerous questions relative to the powers and duties of the Coordinating Council.
The legislative intent in creating the Coordinating Council is declared in sec. 39.01, Stats. (1967), as amended by ch. 276, Laws of 1969. This section states the purposes of the Council to be:
"39.01 The purpose of this subchapter is to provide for the direction and coordination of the activities of the university of Wisconsin, the state universities, schools of vocational, technical and adult education and county teachers colleges by providing a permanent coordinating council for higher education to make a continuing study of the state-supported institutions of higher education under their jurisdiction and the relation thereto of the needs of the people of Wisconsin, to recommend necessary changes in programs and facilities, to provide for a single, consolidated, biennial budget request for the university of Wisconsin and the state universities, and that portion of the budget request of the board of vocational, technical and adult education described in s. 39.03 (3) and to report the results of its studies and recommendations to the governor and the legislature." *Page 32 
To accomplish these purposes, the agency was given certain powers and duties which are set forth in sec. 39.03, Stats. (1967), as amended by the 1969 session of the legislature. In considering the powers and duties of the Council, it is essential to consider the provisions of sec. 39.03 (7), Stats. (1967), which read in part as follows:
"Except as expressly provided in this subchapter nothing herein shall be construed to deprive the regents of the university, the board of regents of state colleges, the state board of vocational, technical and adult education and boards of county teachers colleges of any of the duties and powers conferred upon them by law in the government of the institutions under their control."
Specifically you have asked:
(1) Does CCHE have the power to set statewide guidelines or policies which would determine for all state-supported post-high school institutions:
(a) The definition of and classification of a "teaching assistant,"
(b) The number or proportion of teaching assistants allowable in the instructional staff of an institution,
(c) The maximum number of hours per week, pay per hour and working conditions for teaching assistants.
The Council is primarily charged with the duty and responsibility of coordinating curriculum between the various institutions of higher education and in determining and presenting the biennial budget request to the Governor.
Under sec. 37.11 (2), Stats. (1967), the Board of Regents of State Universities has the power to employ assistants and teachers and to prescribe their duties. Under sec. 36.06 (1), Stats. (1967), the Regents of the University of Wisconsin have similar powers including the specific authority to fix salaries. Similarly, under ch. 41 and specifically sec.41.155 (9), Stats. (1967), the District Board has express authority to employ and fix the compensation of teachers and technical advisors subject to the approval and requirements *Page 33 
of the State Board of Vocational, Technical and Adult Education. Sections 41.37 and 41.41, Stats. (1967), empower county teacher college boards with the same powers and fixes the qualifications of teachers.
In my opinion, the answer to question (1) (a) through (c) must be no. The Coordinating Council does not have the authority or power to determine what are essentially personnel matters. These functions are expressly reserved to the governing boards of the particular institutions. However, the Coordinating Council in exercising its statutory fiscal control may, as a very practical matter, effect the employment of teaching assistants.
The Coordinating Council does not have the authority or power to directly promulgate personnel or management policies for these institutions other than those that are necessary for proper budgetary presentation.
Additionally, you have asked:
(2) Does CCHE have the power to establish statewide policies relative to procedures for institutional reaction to campus disturbances such as the following:
(a) Obligation of campus officers to call for law enforcement personnel under certain conditions of riot,
(b) Penalties to be levied in conjunction with certain acts of campus disturbances that would be applicable in all state public higher education institutions,
(c) Procedures for due process in campus disciplinary systems accorded to students undergoing disciplinary procedures,
(d) Procedures for establishing community campus responsibilities and financial obligations for police and fire protection.
The answer to this question is clearly no. There is nothing in ch. 39, Stats. (1967), or in the Laws of 1969 that empower the Council to supervise or prescribe student disciplinary procedure or procedure for establishing community campus responsibilities and financial obligations for police and fire *Page 34 
protection. These functions are clearly, specifically and expressly reserved to the institutions.*
Further, you have asked:
(3) Does CCHE have the power to prescribe statewide policies to be followed by public higher institutions relative to the following faculty management problems:
(a) Minimum student faculty ratios to be achieved by each institution,
(b) Average teaching load to be achieved by an institution,
(c) Salaries to be paid by any institution for specified instructional duties,
(d) Uniform procedures in negotiating with faculty associations.
The functions involved in questions (a) and (b) are primarily related to the day-to-day operations of the institutions and do not directly involve curriculum or budgetary matters. As such, these matters are under the direct supervision of the governing boards of the particular institutions and are not the responsibility of the Coordinating Council.
However, as the Council is the "final authority in determining the biennial budget request," criteria could be established as a matter of budgetary control. In this respect the Council would be exercising its fiscal responsibilities rather than usurping the direct administration of the institutions.
It is my opinion that the matters referred to in questions (c) and (d) are clearly administrative and within the purview of the institutions' powers and responsibilities. For example, the Regents of the University of Wisconsin are given express power to "fix the salaries" (sec. 36.06 (1), Stats. (1967)), and the Board of Regents of State Universities are given the power of appointment, which, in my opinion, necessarily includes the determination of salaries. *Page 35 
(sec. 37.11 (2), Stats. (1967)). This, of course, does not mean the salary requests of the institutions must be accepted by the Coordinating Council. It does mean, however, that the Council does not have the authority to say that Professor A shall receive so much and Professor B so much. Further, in my opinion, the Coordinating Council may not say English professors are to be paid more than Sociology professors. Nor does the Council have the authority to say that teachers with doctors' degrees are to be paid so much and teachers with lesser degrees are to be paid something less. The matter of fixing individual compensation is so directly related to the management and operation of the institution, that it must be left with those who have such responsibility under the law.
Similarly, the matter of negotiation with employe associations is one of management or administration, and is not a matter for the Coordinating Council.
In question 4 you have asked:
(4) Does CCHE have the power to require that any request for appropriation of GPR funds by a public system of higher education to the state be reviewed by CCHE prior to, or simultaneously with, that request? For example, do institutional requests to the Bureau of Government Operations for supplemental funds to meet enrollment increases require CCHE approval?
The answer to the example given in question (4) is no. The statutes are clear in this matter. Under sec. 14.72 (2), Stats. (1967), the Board on Government Operations is:
"* * * authorized to supplement the appropriation of any department, board, commission or agency, which is insufficient because of unforeseen emergencies or insufficient to accomplish the purpose for which made * * *"
The Council, under sec. 39.03 (7), Stats. (1967), only has final authority on the budget presented to the Governor. Once the budget has been adopted by the legislature, institutions of higher education may seek additional appropriations to meet emergencies without the approval of the Council. *Page 36 
In question (5) you have asked:
(5) Does CCHE have the right to obtain any available or required information relative to policy formation in harmony with its statutory empowerments from systems and/or institutions. For example, can it require detailed data on:
(a) Costs of instruction,
(b) Faculty workloads,
(c) Salaries.
The answer to this question is yes.
Finally, you have asked:
(6) In its responsibility to determine overall educational programs, approve new programs, and to direct discontinuance of existing educational programs when deemed necessary, does the CCHE have the power to stop the use of state funds for programs not approved by CCHE.
Section 39.03 (1) as amended by ch. 438, Laws of 1969, reads:
"39.03 (1) The coordinating council shall determine what overall educational programs shall be offered in the several units of tile university of Wisconsin, the state universities, the collegiate transfer and technical education programs of the schools of vocational, technical and adult education and the county teachers colleges to avoid unnecessary duplication and to utilize to the best advantage the facilities and personnel available for instruction in the fields of higher education. No new educational program may be developed or instituted at any institution of higher education except with the coordinating council's approval. The coordinating council may direct the discontinuance of existing educational programs as it deems necessary to conform to state planning efforts and to assure the best utilization of facilities and personnel."
The Council does not have any express statutory authority over institutions of higher education which it could exercise to force compliance with its determinations. In answering this question, which I assume to be hypothetical, it must *Page 37 
be presumed that government agencies will act lawfully and properly.White House Milk Co. v. Thomson (1957), 275 Wis. 243, 81 N.W.2d 725. Also see 52 Am. Jur. § 26, Taxpayers' Actions.
If a dispute should arise between the Council and an institution of higher education, the matter should be referred to this office for appropriate action.
RWW:CAB
* For example, see secs. 36.12 and 37.11 (10), Stats. (1967)